taken by him under the authority of the former order. But this is the case of new evidence discovered since that order was made, and not in the contemplation of the parties when the former commission was executed. It is therefore the common case of an application by the party, to avail himself of new evidence material to the merits, where there has been no prior knowledge, and of course no laches on his part to affect his rights. Even after a trial, courts of law are in the habit of granting new trials under circumstances of this sort. And if so, there can be no just reason why the application should not be entertained in a suit in admiralty, addressing itself to the sound discretion of the court. The former must be necessarily restrained in its operation to evidence antecedently existing and known to the district attorney, so that it might be taken under the former commission. Motion granted.

[NOTE. The decree of acquittal pronounced in the district court (case unreported) was affirmed on appeal by the circuit court. Case No. 12,104.]

## Case No. 12,104.

### The RUBY.

[5 Mason, 534.] [1]

Circuit Court, D. Maine. Oct. Term, 1830.

SEIZURE—BONA FIDE PURCHASERS—ADMISSIONS OF FORMER OWNERS.

1. The declarations and admissions of the original owners of a vessel, not a part of the res gestæ, but containing a mere narrative or admission of pre-existing facts and occurrences, tending to establish a forfeiture, are not evidence against subsequent bona fide purchasers of the vessel.

2. Doubtful circumstances, which the original owners might explain, if claimants, do not press as heavily against bona fide purchasers, who are not presumed to be conversant of them.

[Appeal from the district court of the United States for the district of Maine.]

This was a libel of seizure of the schooner Ruby, for an asserted forfeiture under the coasting act of 1793, c. 52. The libel contained two counts, or allegations. The first alleged, that the Ruby being, in 1824, a vessel duly enrolled and licensed for the coasting trade, was engaged in a trade other than that for which she was licensed (section 32); the second alleged, that while she was so licensed, she proceeded on a foreign voyage, without first giving up her enrolment and license (section 8). The claimants [Asa Woodberry and others], in their claim and answer, asserted themselves to be bona fide purchasers of the Ruby, for a valuable consideration, without notice of any forfeiture, and denied the allegations of the libel. A decree of acquittal was pronounced in the district court [case unreported], from which an appeal was taken by the United States, to the circuit court.

[For a hearing on a motion to introduce new-

ly-discovered evidence, see Case No. 12,103.]

The cause was argued at this term upon the evidence taken by the parties, by Shepley, district attorney, for the United States, and by C. S. Daveis, for the claimants. It turned principally upon questions of fact. There was much new testimony taken since the appeal.

STORY, Circuit Justice. This cause comes before the court upon the claim of bona fide purchasers for a valuable consideration without notice, at a considerable distance of time, and after many intermediate voyages, since the asserted offences were perpetrated. Under such circumstances, the court is in the habit of requiring somewhat stronger evidence to inflict the penalty of forfeiture, than it ordinarily does require, where the original owners are before the court, who may be presumed to be conversant of all the transactions. If the evidence bears against the innocence of the vessel, and yet has some imperfections and infirmities, the case will stand less favourably in respect to the original owners, than in respect to bona fide purchasers; for the former have it in their power to explain many doubtful circumstances, of which the latter may be presumed to be in utter ignorance. Those circumstances, therefore, press less hardly against the latter, than the former. If the owners may explain, but do not, their silence of itself becomes significant. It affords a corroboration of all the unfavourable conclusions, which the actual posture of the evidence justifies. And in proportion as time has intervened since the asserted transgression, the difficulty of removing apparent incongruities is presumed to increase, since it throws into obscurity many of the means of explanation. Not to yield to such considerations on the part of the court, would be to resist the ordinary results of human experience, to seek an ocasion to inflict forfeitures, rather than to indulge those presumptions of innocence, which the law throws round the party for his protection against oppression and fraud.

There is another point, suggested by the circumstances attendant upon this case, which is of a good deal of practical importance, and may affect the security of the title of purchasers in no inconsiderable degree. The declarations, and oral admissions of the original owners, have been sprinkled by the testimony with a somewhat uncommon frequency over this record. The question is, how far such declarations and admissions as to past facts and occurrences are evidence against bona fide purchasers. It is obvious, that if these declarations and admissions are evidence against purchasers at all times, and in all circumstances, in the same manner and to the same extent, as if the original owners were now sole litigants before the court, there can scarcely be any security to any derivative title. Purchasers will be in imminent peril, not only from offences, but from confession of offences, which may be imaginary and collusive, as well as real and true. On this subject, I am of

[1] [Reported. by William P. Mason, Esq.]

opinion, that the rule of law is, that the declarations of the owners of the vessel, so far as they constitute a part of the res gestæ, at the time of the asserted offence, are evidence against all subsequent claimants. But declarations made after the res gestæ and constituting in no just sense a part thereof, or which contain a mere historical narrative or admission of pre-existing facts, although made by them while they were yet owners of the vessel, are not evidence against bona fide purchasers. In their nature they are mere hearsay, the declarations of third persons not under oath, and ought not to bind the rights or interests of innocent parties. I shall accordingly reject all that portion of the testimony, which states declarations or admissions of the original owners, not falling within the rule above stated.

Having disposed of these considerations, which present a view of legal principles, I shall now proceed to a review of the facts, keeping in mind the general doctrine, that this is not a case where by statutory regulations, the onus probandi is thrown upon the claimants.

The judge here reviewed the evidence, and decided, that the forfeiture was not proved; and he accordingly affirmed the decree of the district court, but directed that a certificate be entered that there was reasonable cause of seizure. Decree affirmed.

---

# Case No. 12,105.

## RUCH v. ROCK ISLAND.

### [5 Biss. 95.] [1]

Circuit Court, N. D. Illinois. June, 1869.

DEDICATION—WHAT CONSTITUTES—IRREVOCABLE—ESTOPPEL.

1. Where, in a town plat, one block appears unsubdivided, and without number or mark, that does not constitute a dedication to public purposes; but a statement by the owners, at the time, that it was to be a public square, is a dedication for that purpose.
[Cited in San Leandro v. Le Breton, 72 Cal. 170, 13 Pac. 407.]

2. A dedication, once made, cannot be recalled; and the intention of the owners at the time is to be considered—not their intention at any subsequent time.

3. A purchase by the city of the rights of parties occupying ground claimed as dedicated, does not compromise its claim under the dedication.

Ejectment [by John Ruch against the city of Rock Island] for a block of land in Spencer & Case's addition to the town of Stephenson, the former name of Rock Island.

The defendant claimed by virtue of an alleged dedication.

DRUMMOND, District Judge (charging jury). Jonah H. Case and a Mr. Spencer were, in May, 1836, the claimants to a certain tract

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

of land within the present corporate limits of the city of Rock Island, and on the 17th of that month, laid off a town upon it and recorded the plat in Rock Island county, which was called "Spencer & Case's Addition to the Town of Stephenson" (the former name of the city of Rock Island). On the 21st day of May, 1836, one of the parties entered the land, and became the purchaser from the United States. The plat, as recorded, represents a town bordering upon the Mississippi river; the addition to the town consisting of blocks, lots and streets—the streets being named and the blocks and lots numbered. Near the center of this plat, as thus made and recorded, appears a block fronting on streets—a square block—without any number to it, and without anything upon it to designate any particular object or appropriation of the land. The blocks adjoining this block of land are divided somewhat differently from the other blocks, the alleys running in different directions, and all the lots being made to front on this unnumbered block.

It is true that, where a plat is made and recorded in the way in which this was, if a mark is put upon the plat, indicating that a certain part is for a particular purpose, a legal presumption arises that it is appropriated to that purpose, as in the case of streets; and if, in point of fact, this vacant block of land had been marked or designated in any way, that would have created a legal conclusion of its appropriation to that particular use.

It would seem, therefore, as though there was a peculiarity connected with this block, to show that it was to be something different from the other blocks, but it is necessary that there should be some other proof, in order to show what was the particular object or reason why it was left in this condition. For example, if the owners had intended it should be appropriated as a public square, or to any public use, it was easy so to designate it.

Is there any evidence in the case to show that the minds of the owners did form a purpose, and that that purpose was a finished, complete purpose, so as to enable us to say that this particular lot of land was appropriated to a general or public use?

It is clear that there was an unformed purpose in the minds of the owners of the block, because, if they intended to appropriate it to any particular public use, it could have been so stated on the plat. They did not choose so to state. Now, the only clear evidence we have prior to the sale of these lots, is contained in the deposition of Mr. Powers. He says that he was empowered by the parties to sell these lots, and they were sold in the fall of 1836. In the meantime, on the 8th of June, 1836, between the date of entry and time of sale, Mr. Case sold an interest in the land to Mr. Spencer, thus, as it were, confirming the plat that had been made of the Spencer & Case addition to Stephenson. At the time of this sale, it was stated by Case to Powers, who made the sale under